### COMMONWEALTH *vs.* THOMAS O'NEIL.

Berkshire.    September 9, 1919. — October 9, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Municipal Corporations,* By-laws and ordinances.    *Constitutional Law,* Interstate commerce.    *Practice. Criminal,* Report of judge.    *Words,* "Memorandum."

An ordinance of a city entitled "Hackney Carriages, Trucks, Drays, etc.," passed under R. L. c. 25, § 24, before the enactment of St. 1916, c. 293, which prohibits any person from using or driving any "hack, coach, cab, or other vehicle . . . drawn by one or more horses, or propelled by power," for the conveyance of persons for hire from place to place within the city without a license from the mayor and aldermen and imposes a penalty for violation of its provisions, was *held* not to apply nor to be intended to apply to the use or driving of a motor vehicle devoted exclusively to the transportation of passengers for hire between a city in another State and a city in this Commonwealth, and a person engaged solely in such interstate commerce cannot be prosecuted under the ordinance for driving without a license.

After the conviction of a defendant in the Superior Court for a criminal offence, a report of the trial judge under R. L. c. 219, § 34, at the request of such defendant, of a question of law, which in the opinion of the judge is so important or doubtful as to require the decision of this court, should be signed by the judge and should state the question of law and recite or refer to facts or parts of the record sufficient to make intelligible the question of law reported.

It here was *pointed out* that the word "memorandum" is not an accurate designation of such a report.

COMPLAINT, received and sworn to on June 19, 1919, in the District Court of Central Berkshire, charging that the defendant at Pittsfield on June 18, 1919, did use or drive an automobile in Pittsfield for the conveyance of persons for hire in the city of Pittsfield without having a license so to do.

On appeal to the Superior Court the defendant was tried before *N. P. Brown,* J., upon an agreed statement of facts, which was as follows:

"Thomas O'Neil, operates a motor vehicle, making a daily trip from the Ten Eyck Hotel in Albany, New York, to the Wendell Hotel in Pittsfield, Massachusetts, and return carrying passengers for hire between said termini.

"A copy of an ordinance of the city of Pittsfield is hereto

attached, a Revised Ordinance of the city of Pittsfield approved May 28, 1915, c. 23, §§ 1, 2.

"The defendant has no license or permit to carry passengers for hire from place to place within said city as required by said ordinance. Passengers are only accepted for the entire trip. A trip was made on the day alleged in the complaint."

The ordinance is described in the opinion. The defendant made a motion in writing asking the judge to order a verdict of not guilty.

The following unsigned statement was attached to the record entitled "Memorandum of court:"

"By agreement of the Commonwealth and the defendant, in open court, a jury was impaneled and the above mentioned agreed statement of facts was read to the jury as the sole evidence in the case. After the reading of this evidence the defendant's counsel presented the motion which is above set forth requesting the court to direct a verdict of not guilty, which motion the court refused to grant and thereafter directed the jury to render a verdict of guilty.

"To the court's refusal to direct a verdict of not guilty, as well as the court's direction of a verdict of guilty, the defendant duly objected and requested that his exceptions to such direction and refusal to direct be duly noted; the court thereupon saved the defendant's exceptions and ordered that they be duly noted.

"Whereupon, in open court, counsel for the Commonwealth and counsel for the defendant jointly requested the court to report the case to the full bench of the Supreme Judicial Court for final determination, stipulating that, if the verdict of the jury is warranted by law, the defendant shall stand convicted; if the verdict of the jury is not warranted by law, it shall be set aside and the defendant discharged."

*J. Fallon,* for the defendant.

*J. B. Ely,* District Attorney, & *J. M. McMahon,* Assistant District Attorney, for the Commonwealth, submitted a brief.

RUGG, C. J. This is a complaint charging the defendant with using or driving an automobile for the conveyance of persons for hire without a license, contrary to the terms of an ordinance of the city of Pittsfield. That ordinance among other matters prohibits any person from using or driving an automobile for the

transportation of persons for hire from place to place within the city without a license from the mayor and board of aldermen, which may be subject to such conditions as the licensing officers "may deem expedient and may be revoked at their discretion," and imposes a penalty for violation of its provisions. The agreed facts show that the defendant at the time alleged operated a motor vehicle, making a daily trip from the Ten Eyck Hotel in Albany in the State of New York to the Wendell Hotel in Pittsfield in the county of Berkshire, and return, carrying passengers for hire accepted only for the entire trip between these two points. He had no such license as the ordinance required. The defendant contends that he was engaged in interstate commerce exclusively, and hence that a verdict of not guilty ought to have been directed.

It is plain that the business in which the defendant was engaged was exclusively interstate commerce. "From an early day such commerce has been held to include the transportation of persons and property no less than the purchase, sale and exchange of commodities." *United States* v. *Hill*, 248 U. S. 420, 423.

It becomes necessary to examine decisions respecting the legitimate field of police regulations affecting interstate commerce, and to determine the scope and meaning of the ordinance in the light of such permanent principles as have been established.

It was held in *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, that a statute requiring a local license for the transportation of intoxicating liquors into a city or town, in which licenses of the first five classes for the sale of intoxicating liquor were not granted, by any person or corporation other than a railroad or street railway corporation would be unconstitutional if construed as applicable to interstate commerce. It, therefore, was decided that the intent of the Legislature was to restrict its operation to intrastate commerce, as to which it was valid.

In *Adams Express Co.* v. *New York*, 232 U. S. 14, one point raised was whether an ordinance of the city of New York which prohibited the exercise of the business of "expressmen" except under an annual license granted by the mayor and revocable by him, would be valid if held applicable to interstate business. It was said at page 31 that, if the provisions of the ordinance "be deemed to require that a license must be obtained as a con-

dition precedent to conducting the interstate business of an express company, we are of the opinion that so construed they would be clearly unconstitutional. It is insisted that, under the authority of the State, the ordinances were adopted in the exercise of the police power. But that does not justify the imposition of a direct burden upon interstate commerce. Undoubtedly, the exertion of the power essential to assure needed protection to the community may extend incidentally to the operations of a carrier in its interstate business, provided it does not subject that business to unreasonable demands and is not opposed to federal legislation. . . . It must, however, be confined to matters which are appropriately of local concern. It must proceed upon the recognition of the right secured by the Federal Constitution. Local police regulations cannot go so far as to deny the right to engage in interstate commerce, or to treat it as a local privilege and prohibit its exercise in the absence of a local license. *Crutcher v. Kentucky*, 141 U. S. 47, 58; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 496; *Leloup* v. *Mobile*, 127 U. S. 640, 645; *Stoutenburgh* v. *Hennick*, 129 U. S. 141, 148; *Rearick* v. *Pennsylvania*, 203 U. S. 507; *International Textbook Co.* v. *Pigg*, 217 U. S. 91, 109; *Oklahoma* v. *Kansas Natural Gas Co.* 221 U. S. 229, 260; *Buck Stove Co.* v. *Vickers*, 226 U. S. 205, 215; *Crenshaw* v. *Arkansas*, 227 U. S. 389; *Minnesota Rate Cases*, 230 U. S. 352, 401. As was said by this court in *Crutcher* v. *Kentucky*, 141 U. S. p. 58, 'a State law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it.'" Arguments that that ordinance might be upheld as imposing a fee for the use of streets, as based on the nature of the business, or as inspection charges, were summarily disposed of as inapposite or inadequate. To the same effect is *United States Express Co.* v. *New York*, 232 U. S. 35. In *Sault Ste. Marie* v. *International Transit Co.* 234 U. S. 333, the appellant city passed an ordinance requiring a license for the operation of a ferry "across the St. Mary's River to the opposite shore" in the province of Ontario. It was held that the action of the city "in requiring the appellee to take out a license, and to pay a license fee, for the privilege of transacting the business conducted at its wharf," of maintaining an office and receiving fares for passage upon steam ferry boats which

touched there for the purpose of receiving and discharging passengers and freight, "was beyond the power which the State could exercise either directly or by delegation." It was said at page 341, "The fundamental principle involved has been applied by this court in recent decisions in a great variety of circumstances, and it must be taken to be firmly established that one otherwise enjoying full capacity for the purpose cannot be compelled to take out a local license for the mere privilege of carrying on interstate or foreign commerce."

On the other hand a large group of laws, general in their operation and affecting interstate commerce only incidentally, are not unconstitutional. *Wilmington Transportation Co.* v. *California Railroad Commission*, 236 U. S. 151. *Postal Telegraph-Cable Co.* v. *Richmond*, 249 U. S. 252, 258, *et seq.* *Atlantic Coast Line Railroad* v. *Georgia*, 234 U. S. 280. *Denver & Rio Grande Railroad* v. *Denver*, 250 U. S. 241, 246. *Port Richmond & Bergen Point Ferry Co.* v. *Hudson County*, 234 U. S. 317. *Commonwealth* v. *Moore*, 214 Mass. 19. See cases collected in *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, at page 578. See, as to automobiles, *Commonwealth* v. *Newhall*, 205 Mass. 344; *Commonwealth* v. *Gile*, 217 Mass. 18. See also, *Commonwealth* v. *Closson*, 229 Mass. 329. Two recent decisions of the United States Supreme Court approach nearest, among this class of adjudications, to the case at bar. An attack was made in *Hendrick* v. *Maryland*, 235 U. S. 610, upon a statute, general in scope and applicable alike to all owners or users of automobiles or motor vehicles, which required registration and a fee roughly proportioned to the horse power of the vehicle. No person was permitted to drive a car unless licensed after payment of a fee. Other sections related to speed, the law of the road, accidents, signals and kindred matters. Exceptions were made for the benefit of non-resident owners or operators under specified limitations. The fees confessedly were for revenue and not merely to cover inspection charges. In the course of an opinion sustaining the constitutionality of the statute, it was said (at page 622): "The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads the construction and maintenance of which are exceedingly expensive;

and in recent years insistent demands have been made upon the States for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well known, in order to meet this demand and accommodate the growing traffic the State of Maryland has built and is maintaining a system of improved roadways. Primarily for the enforcement of good order and the protection of those within its own jurisdiction the State put into effect the above-described general regulations, including requirements for registration and licenses. · A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious. In the absence of national legislation covering the subject a State may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles — those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse-power of the engines — a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the States and essential to the preservation of the health, safety and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce." In *Kane* v. *New Jersey*, 242 U. S. 160, the constitutionality of a statute requiring, in addition to general license and registration and fee, the appointment of a resident agent by non-resident owners of automobiles was upheld. The reason for sustaining the validity of the laws assailed in those two decisions, as succinctly stated in *Mountain Timber Co.* v. *Washington*, 243 U. S. 219, 245, was that they imposed "license fees upon motor vehicles, graduated according to horse-power, so as to secure compensation for the use of improved roadways from a class of users for whose needs they are essential and whose operations over them are peculiarly injurious."

The ordinance here in question must be examined and interpreted with reference to these decisions and the principles which they declare. Every rational presumption in favor of its validity must be indulged, and it will not be denounced as contrary to the

Constitution unless its language is so clear and explicit as to render impossible any other reasonable construction. *Perkins* v. *Westwood,* 226 Mass. 268, 271, and cases collected.

The title of the ordinance (to which reference may be made in order to ascertain its meaning, *Proprietors of Mills on Monatiquot River* v. *Randolph,* 157 Mass. 345, 356,) is "Hackney Carriages, Trucks, Drays, etc." It is provided by § 1 that "Every hack, coach, cab, or other vehicle, whether on wheels or runners, drawn by one or more horses, or propelled by power and used for the conveyance of persons for hire from place to place within the city, shall be deemed a hackney carriage. . . ." Section 2 relates to the granting of licenses, and § 3 provides that the licensee shall be considered the owner. It is the effect of § 4, that distinguishing marks of specified color containing the number of the license shall be upon the outside of the carriage, and a card with the owner's name and "the rates of fare fixed by the board of aldermen" upon the inside. The use of any other number than that designated in the license is prohibited by § 5. The duty is cast upon the board of aldermen by § 6 to establish fares for the conveyance of passengers and their baggage, while the demand or receipt of a higher fare and the unreasonable refusal to carry a "passenger from place to place within the city" is prohibited by § 9. The wearing of a badge easily to be seen and read upon the hat or cap of every person in charge of a hackney carriage, while at a railroad station, is required by § 7. Driving by persons under eighteen years of age without special permission from the board of aldermen is forbidden by § 8. The provisions of § 10 relate to fees and terms of licenses. The use of stands for hire, other than those designated by the chief of police, is interdicted by § 11 while by § 12 the solicitation of patronage by unlicensed persons is prohibited. The final section fixes a penalty for violation of the provisions of the ordinance.

This ordinance was approved in 1915. It is manifest from this circumstance as well as from its terms that it was not adopted pursuant to St. 1916, c. 293, which confers upon such cities and towns as accept its provisions certain powers to license and regulate transportation of passengers for hire by motor vehicles. The decisions in *Commonwealth* v. *Slocum,* 230 Mass. 180, and *Commonwealth* v. *Theberge,* 231 Mass. 386, which arose under that statute, have no pertinency to the facts here disclosed.

It is apparent from the analysis of the ordinance that its main design is to regulate purely local matters. It was enacted under the authority of R. L. c. 25, § 24. It is not framed to prevent the dangerous operation of motor vehicles, to ensure safety and convenience of travel upon streets, to require skilled drivers of motor vehicles, or to facilitate the receiving or discharge of passengers. Some of these and kindred matters in considerable part are within the sweep of St. 1909, c. 534, and its amendments, which relate to the registration and operation of motor vehicles and the licensing of those who drive them, all by a board of State officers. Many of the provisions of the ordinance, particularly those respecting the establishment of rates of fare by the board of aldermen, manifestly have no relevancy to the kind of business conducted by the defendant. Such rates in the nature of things could be operative only within the boundaries of the city. The requirements for markings upon the vehicles, with the numbers of licenses, also are not applicable to him. The ordinance in its general scope and apparent purpose does not fall within the class which was upheld in *Hendrick* v. *Maryland* and *Kane* v. *New Jersey,* both *ubi supra.* We incline to the view that, if by its express terms made applicable to interstate commerce, this particular ordinance under the circumstances here disclosed would fall within the inhibitions of such decisions as *Adams Express Co.* v. *New York, ubi supra.* But it is not so made applicable. A statute, ordinance or other regulation in the nature of a legislative enactment which would be unconstitutional as applied to a certain class of cases and is constitutional as applied to other classes, may be held to have been intended to apply only to the latter, if that appears to be in harmony with the purpose of the body exercising the legislative power. *Attorney General* v. *Electric Storage Battery Co.* 188 Mass. 239, 241. Rightly construed and interpreted the ordinance here in question does not and was not intended to apply to the use or driving of a motor vehicle devoted exclusively to the transportation of passengers between Albany in the State of New York and Pittsfield in this Commonwealth. It has an ample scope for its potency by construing it as regulating only intrastate traffic and as not including interstate commerce. Since the only use or driving of an automobile for the conveyance of persons for hire with which the defendant was connected was interstate commerce,

a verdict of not guilty ought to have been directed. His request to that effect should have been granted.

The presentation of the case to this court is informal. A judge of the Superior Court may, after the conviction of a person, report a question of law arising upon the trial which in his opinion is so important or doubtful as to require the decision of this court, if the defendant desires or consents to it. R. L. c. 219, § 34. Such a report should state the question of law. The report in the case at bar does not state any question of law. It refers among other matters to a copy of "memorandum of the court" as "annexed." That paper, which is at the end of the record and which does not appear to be signed by the judge, states a ruling of law made by the judge and recites a request for a report of it to this court by counsel for the defendant. The report over the signature of the judge should state the question or questions of law arising upon the trial of the person convicted, and recite or refer to facts or parts of the record sufficient to make intelligible the question or questions of law reported. The use of the word "memorandum" in such connection, although grown somewhat common, is not accurate. The function of a judge is to decide questions presented to him. He does this either by making a finding of the facts or a ruling as to the law, or by doing both, no one of which rightly is describable as a memorandum. This matter does not affect the merits of the case and is referred to only that simple and correct practice may be promoted.

*Verdict set aside.*
*Defendant to be discharged.*