WALTER A. BARROWS & others *vs.* FARNUM'S STAGE LINES, INCORPORATED.

Suffolk.    November 16, 1925. — January 5, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Motor Vehicle*, Buses, License. *Equity Jurisdiction*, Bill by ten citizens to restrain unlawful operation of motor buses. *Constitutional Law*, Interstate commerce, Police power.

The requirements of G. L. c. 159, §§ 45–48 B; St. 1925, c. 280, §§ 1, 2, as to licenses, certificates, and permits for the transaction within the Commonwealth of the business of transporting passengers for hire over the public ways, are constitutional.

A municipality, over whose public ways are run motor buses whereby illegal business is conducted, is "affected" by such violation of law in the sense in which that word is used in St. 1925, c. 280, § 3.

The provisions of G. L. c. 159, § 49, as amended by St. 1925, c. 280, § 3, giving to the Supreme Judicial Court and the Superior Court jurisdiction in equity over suits by "ten citizens of any city or town affected" by a violation of the requirements of G. L. c. 159, §§ 45–48 B; St. 1925, c. 280, §§ 1, 2, as to licenses, certificates, and permits for the transaction within the Commonwealth of the business of transporting passengers for hire over the public ways, are constitutional.

A bill in equity of the character above described may be maintained by ten citizens of Newton to restrain a corporation, operating motor buses for the carriage of passengers for hire between Boston in this Commonwealth and Providence in the State of Rhode Island by way of Worcester in this Commonwealth, from operating any motor vehicle on any public way for the carriage of passengers for hire as a business between Boston and Worcester, other than passengers *en route* via one of the defendant's buses to or from a point outside this· Commonwealth, unless and until the defendant shall have obtained a valid license therefor from the city council of Newton, in or through which such motor vehicle is operated, and the certificate from the department of public utilities and the permit from the division of highways required by statute.

G. L. c. 159, §§ 45–48 B; St. 1925, c. 280, §§ 1, 2, do not permit one, engaged in interstate transportation of passengers for hire by motor vehicle, also to transport for hire passengers, the beginning and end of whose carriage is within the Commonwealth.

A corporation, operating motor buses for the carriage of passengers for hire between cities within this Commonwealth as fixed and regular termini, cannot avoid the requirements of G. L. c. 159, §§ 45–48 B; St. 1925, c. 280, §§ 1, 2, as to licenses, certificates, and permits for the

transaction of that business within the Commonwealth, by extending its business beyond one or the other of those termini into another State and thus engaging in interstate commerce.

G. L. c. 159, §§ 45–49; St. 1925, c. 280, §§ 1–3, prohibit a corporation, operating motor buses between Boston and Providence in the State of Rhode Island by way of Worcester in this Commonwealth, from carrying passengers for hire between Boston and Worcester as fixed and regular termini without procuring the licenses and certificates required by those statutory provisions.

As above interpreted, the statutory provisions, since they expressly exempt from their prohibitions those engaged in "such carriage as may be exclusively interstate," are not violative of the interstate commerce clause of art. 1, § 8, of the Constitution of the United States, have no direct relation to interstate commerce and, so far as they affect interstate commerce, are a reasonable exercise of the police power of the Commonwealth.

BILL IN EQUITY, filed in the Superior Court on August 21, 1925, and afterwards amended, seeking to restrain the defendant from operating any motor vehicle on any public way, for the carriage of passengers for hire as a business, between Boston and Worcester, other than passengers *en route* via one of the defendant's buses to or from a point outside this Commonwealth, unless and until the defendant shall have obtained a valid license therefor from the city council of Newton, in or through which such motor vehicle is operated, and the certificate from the department of public utilities and permit from the division of highways required by statute.

Material allegations of the bill are described in the opinion. The defendant demurred. The demurrer was heard by *Lummus,* J., by whose order an interlocutory decree was entered overruling it. The judge then, being of opinion that such interlocutory decree so affected the merits of the controversy that the matter ought, before further proceedings, to be determined by this court, reported the questions of law raised by the demurrer and interlocutory decree for determination by this court.

*A. V. A. Thomason,* for the defendant.

*Joseph Wentworth,* (*L. S. Nicholson* with him,) for the plaintiffs.

RUGG, C.J. This suit in equity has been reported for our consideration on the bill and demurrer, after the entry of an

interlocutory decree overruling the demurrer.  The allegations of the bill must be taken to be true for the purposes of this decision.  The plaintiffs are ten citizens of the city of Newton affected by the violation of law set out in the bill. The defendant is a corporation organized under the laws of and having a usual place of business within this Commonwealth.  It operates motor buses as a business for the carriage of passengers for hire over public ways through the city of Newton between Boston by way of Worcester, both in this Commonwealth, and Providence in the State of Rhode Island, the route between Boston and Worcester lying wholly over public ways within this Commonwealth.  The defendant does a large business in transporting passengers regularly between Boston and Worcester and sells tickets therefor, such transportation being wholly within this Commonwealth. The defendant's buses on the way from Boston to Providence make stops in Worcester to discharge passengers taken on at Boston, and buses on the way from Providence to Boston stop at Worcester to receive passengers for Boston.  There are regular stopping places for the reception and discharge of passengers in Boston, Worcester and Providence.  The defendant does this business between Boston and Worcester without having obtained a license therefor from the city council of the city of Newton and without having obtained the certificate from the department of public utilities and the permit from the division of highways of the department of public works, all in violation of G. L. c. 159, §§ 45–48 B; St. 1925, c. 280, §§ 1, 2.

It is provided by St. 1925, c. 280, § 3, that the Supreme Judicial Court and the Superior Court have jurisdiction in equity to restrain such violations of law as here are complained of upon the petition of "ten citizens of any city or town affected by such violation."  It is plain that statutes requiring local licenses, certificates and permits for the transaction of the business within the State of transporting passengers for hire over the public ways are valid.  The ground on which the validity of such statutes rests is that the Legislature has power, by virtue of public ownership of the easement of travel over highways, to exercise reasonable control over

travel on them in the interest of the general welfare.  They may also be justified under the general police power of the States.  *Commonwealth* v. *Slocum,* 230 Mass. 180.  *Burgess* v. *Mayor & Aldermen of Brockton,* 235 Mass. 95, 99.  *Opinion of the Justices,* 251 Mass. 569, 595, 596.  *Hendrick* v. *Maryland,* 235 U. S. 610.  It is universally recognized that the expense imposed upon cities and towns for the maintenance of highways fit to accommodate the traffic of heavy motor vehicles like buses is very great.  A municipality, over whose public ways are run motor buses whereby illegal business is conducted, is "affected" by such violation of law in the sense in which that word is used in amended § 49.

The State has power to confer jurisdiction upon its courts to consider suits at the instance of those who have very remote and even no personal interest in the subject matter. It may invoke or permit the aid in law enforcement of one or of a group of private citizens, whose only purpose is the promotion of observance of law.  There is no constitutional objection to this exercise of legislative power.  A suit by one or more taxpayers to restrain an illegal appropriation of money by a municipality has been constantly held not within the general jurisdiction of a court of equity.  A special statute was necessary to confer such jurisdiction.  No serious question ever has been made of the power of the General Court to confer authority upon ten taxable inhabitants to prosecute such a suit.  *Baldwin* v. *Wilbraham,* 140 Mass. 459.  *Kelley* v. *Peabody Board of Health,* 248 Mass. 165.  As an exercise of legislative power, jurisdiction to consider complaints against those who violate laws regulating motor traffic stands upon the same footing.  A stated number of citizens or a single individual may be clothed by the Legislature with authority to invoke the aid of courts in the suppression of violations of law.  *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 74.  *Carleton* v. *Rugg,* 149 Mass. 550.  *Chase* v. *Proprietors of Revere House,* 232 Mass. 88, 94.

The bill sets out ground for equitable relief as established by the statute.  Prosecution for the commission of crime usually is left to the jurisdiction of common law courts.

Equity will not ordinarily restrain the threatened commission of crime.   The suppression of crime may be promoted under legislative authority by the preventive processes of a court of equity.   It is not necessary when that is done that a petitioner have a private interest to subserve.   He may be actuated exclusively by desire for the general welfare.

The bill sets out a violation of the statute.   The terms of St. 1925, c. 280, § 1, amending G. L. c. 159, § 45, to which reference is made in the bill, expressly and unequivocally forbid the operation of "any motor vehicle upon any public way . . . for transporting passengers for hire as a business between fixed and regular termini, without first obtaining a license therefor" from the city council of a city or the selectmen of a town in which such vehicle is so operated, with a proviso that such license shall not be required as to carriage or transportation exclusively interstate.   Requirement with like proviso is found in St. 1925, c. 280, § 2, adding new sections to G. L. c. 159, §§ 48 A and 48 B, to the effect that a person operating a motor vehicle under a license granted under § 45 must also obtain from the department of public utilities "a certificate declaring that public convenience and necessity require such operation," which certificate must also be approved by the division of highways of the department of public works.   It is too plain for discussion as matter of interpretation that the statute does not permit one engaged in interstate transportation by motor vehicle of passengers for hire, also to transport for hire, passengers the beginning and end of whose carriage is within the Commonwealth.   The exemption from the requirement for license and certificate is confined strictly and solely to those engaged in "such carriage as may be exclusively interstate."   If an interstate carrier by motor vehicle desires at the same time to transport passengers for a journey wholly within the Commonwealth, he cannot do so in conformity with the statute without first obtaining the specified licenses and certificate.

The allegations of the bill show that, so far as concerns the transportation of those passengers for hire between Boston and Worcester alone, it is a business conducted "be-

tween fixed and regular termini." Boston and Worcester constitute the termini for such domestic business and for such local transportation. The defendant cannot by establishing routes for his motor vehicles extending beyond one or the other of those termini change the nature of that particular business as being between those termini. That is settled in principle by *Commonwealth* v. *Theberge,* 231 Mass. 386, and *New York, New Haven & Hartford Railroad* v. *Deister,* 253 Mass. 178. This is the meaning of the statute as we interpret it. That seems to us to be the imperative requirement of its words.

The statute as thus interpreted is not in our opinion violative of the interstate commerce clause of art. 1, § 8, of the Constitution of the United States. For the determination of this point, the decisions of the Supreme Court of the United States afford the sole guide. Those engaged in interstate commerce cannot use the highways of this Commonwealth except subject to such reasonable regulations in the interests of public safety as the statutes permit. *Hendrick* v. *Maryland,* 235 U. S. 610. *Kane* v. *New Jersey,* 242 U. S. 160. *Packard* v. *Banton,* 264 U. S. 140. See *Pawloski* v. *Hess,* 250 Mass. 22. The statute here in question requires no license or certificate of those engaged exclusively in interstate commerce for the carriage of passengers for hire by motor vehicle. Such persons are expressly exempted from its provisions. But it requires those engaged in local business to conform to the statutory requirements as to that business. The statute as we have construed it has no direct relation to interstate commerce. It deals exclusively with domestic or local carriage of passengers for hire. This is not a case where the domestic transportation is purely nominal or wholly incidental to the interstate commerce. On the allegations of the bill the two are quite separate and distinct. There is no necessary connection between the two and either could be conducted without reference to the other. In *Gibbons* v. *Ogden,* 9 Wheat. 1, at page 195, Chief Justice Marshall declared: "The completely internal commerce of a State, then, may be considered as reserved for the State itself." It was said in *Sands* v. *Manistee River Improvement*

*Co.* 123 U. S. 288, at page 295, "The internal commerce of a State — that is, commerce which is wholly confined within its limits — is as much under its control as foreign or interstate commerce is under the control of the general government." In *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211, at page 247 are found these words: "Although the jurisdiction of Congress over commerce among the States is full and complete, it is not questioned that it has none over that which is wholly within a State." The case at bar meets the description of jurisdiction in *Hanley* v. *Kansas City Southern Railway,* 187 U. S. 617, 620, to the effect that, "To bring the transportation within the control of the State, as part of its domestic commerce, the subject transported must be within the entire voyage under the exclusive jurisdiction of the. State." To paraphrase slightly what was said in *Pullman Co.* v. *Adams,* 189 U. S. 420, 422, the defendant "had the right to choose between what points it would carry, and therefore to give up the carriage of passengers from one point to another within the State." It cannot complain of regulations or requirements as to "a local business which it is free to renounce." In *Allen* v. *Pullman's Palace Car Co.* 191 U. S. 171, 180, it was held that where the statute applied "strictly to business done in the transportation of passengers taken up at one point in the State and transported wholly within the State to another point therein," it was not obnoxious to the Federal Constitution but came under the right of the State to control its internal business, although foreign or interstate commerce might be indirectly affected. The case at bar is concluded in principle by *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 575, where it was held with respect to expressmen, "Even though much the larger part of the business of a given individual may be interstate commerce, yet if he engages in local trade, requirement for a permit is a valid regulation respecting such intrastate transactions." Other cases which seem to us to require this conclusion are *Postal Telegraph Cable Co.* v. *Charleston,* 153 U. S. 692, *Osborne* v. *Florida,* 164 U. S. 650, *Kehrer* v. *Stewart,* 197 U. S. 60, *Armour Packing Co.* v. *Lacy,* 200 U. S. 226, *Minnesota Rate Cases,* 230 U. S. 352, 402, 403, *Southern Railway* v.

*Watts,* 260 U. S. 519, 530, *Louisville & Nashville Railroad* v. *Higdon,* 234 U. S. 592, 599, 600.

If it be thought that because the defendant is conducting interstate commerce as a part of its business, the effect of the statute is to regulate that interstate commerce by depriving it of the advantage of profit which it might derive from conducting purely intrastate commerce at the same time by the same employees, vehicles, and other instrumentalities, the answer seems plain.   The State has the power to pass general police regulations, although indirectly interstate commerce may be affected thereby.   The case would then be governed by the principle recognized in a large number of decisions of the United States Supreme Court that State legislation general in operation and not otherwise objectionable is not invalid because it affects interstate commerce.   There is a large body of valid State legislation, incidentally but not primarily or mainly affecting interstate commerce, in fields where Congress has not acted.   *Atlantic Coast Line Railroad* v. *Georgia,* 234 U. S. 280, 290–292.   *J. E. Raley & Brothers* v. *Richardson,* 264 U. S. 157.   *Michigan Central Railroad* v. *Michigan Railroad Commission,* 236 U. S. 615, 629, 634. *Hammer* v. *Dagenhart,* 247 U. S. 251, 274–276.   *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, at page 578, where numerous cases are collected.   *Commonwealth* v. *Moore,* 214 Mass. 19, 25.   *Opinion of the Justices,* 251 Mass. 569, 606, 607, and cases there cited.   It is plain that the statute here in question was designed wholly as a regulation of local and intrastate affairs.   It was in existence in some form or other long before interstate carriage of passengers by motor buses was undertaken.   It is a matter of common knowledge that that kind of interstate commerce is a recent development.   It cannot be that one conducting that kind of interstate commerce may, by linking with it purely local, domestic, intrastate commerce, bring the latter under the full protection of interstate commerce and utterly deprive the States of control thereof by the police power.

It is not contended that Congress has undertaken to regulate in any way intrastate commerce when combined in the manner here disclosed with interstate commerce, and

questions which then might arise are not presented on this record.

In this connection it seems to us irrelevant to inquire whether the driver of the motor vehicle between Boston and Worcester is engaged in interstate commerce, or to discuss *Illinois Central Railroad* v. *Behrens*, 233 U. S. 473, 478, and like authorities. We assume that the driver would be so engaged, but that has nothing to do with the power of the Legislature over local transportation.

Cases like *Commonwealth* v. *O'Neil*, 233 Mass. 535, *Michigan Public Utilities Commission* v. *Duke*, 266 U. S. 570, *Buck* v. *Kuykendall*, 267 U. S. 307, and *George W. Bush & Sons Co.* v. *Maloy*, 267 U. S. 317, illustrate the well recognized principle that a State cannot require a license as a condition precedent to the transaction of interstate commerce, or otherwise impose burdens upon interstate commerce. Those cases are not controlling of the case at bar, where the statute, by unmistakable phrase, shuts out of its scope all exclusively interstate commerce.

*Interlocutory decree overruling*
*demurrer affirmed.*