## HOGAN v. CITY OF INDIANAPOLIS.

[No. 19,909.   Filed November 25, 1902.]

MUNICIPAL CORPORATIONS. — *Vehicle License.—Taxation.—Police Power.
—City of Indianapolis.*—The owner and user of a vehicle subject to
a license fee imposed by an ordinance enacted pursuant to clauses
12, 36, and 39 of §3106 R. S. 1881 authorizing cities to regulate the
use of vehicles, may also be required to pay the tax imposed by
an ordinance enacted pursuant to §3794 Burns 1901, authorizing
certain cities to impose a vehicle tax; the first being imposed
under the police power, and the second under the taxing power
of the city.

From Marion Superior Court; *Vinson Carter,* Judge.

William J. Hogan was convicted of violating a city
ordinance imposing a vehicle tax, and appeals.   *Affirmed.*

*O. H. Carson,* for appellant.
*F. A. Joss, T. C. Whallon* and *C. E. Averill,* for appellee.

JORDAN, J.—Appellant appeals from a judgment con-
victing him of having violated a certain ordinance passed by
the common council of the city of Indianapolis on Novem-
ber 27, 1893.   He is accused in this action of having used
a one-horse wagon owned by him in and upon the streets and
thoroughfares of said city without first having paid the
license tax as required by the provisions of that ordinance.
In 1880 appellee, a municipal corporation, was acting under
and governed by the general laws of this State pertaining to
the organization and government of cities.   Among the enu-
merated powers conferred upon the common councils of
cities by clauses twelve, thirty-six, and thirty-nine, of §3106
R. S. 1881 and Horner 1901, of said general statutes, are
the following: "12.   To regulate the use of coaches, hacks,
drays and other vehicles for the transportation of passen-
gers, freight, or other articles, to or from points within the
city, for hire or pay."   "36.   To establish stands for hack-
ney-coaches, cabs, and omnibuses; to enforce the observ-

ance and use thereof; and fix the rates and prices for transportation of persons and property from one part of the city to another." "39. To regulate the speed of horses, carriages, locomotives, and other vehicles within the city."

In pursuance of these provisions appellee's common council and board of aldermen, as it appears, on March 1, 1880, duly passed and adopted an ordinance which consists of some thirty sections, and which is entitled: "An ordinance declaring that all vehicles, except street railway cars, used in the transporting of persons and articles within the city of Indianapolis, for hire or ,pay, shall be deemed 'public vehicles;' establishing rules and regulations for the government of the owners, lessees, and drivers thereof; and prescribing fines and punishments for violations of its provisions." Sections one and two of this ordinance read as follows: "Section 1. Be it ordained by the common council and board of aldermen of the city of Indianapolis, that omnibuses, hackney carriages, barouches, landaus, cabs, chariots, wagons, drays and all other similar vehicles (except street cars), whether on wheels or runners, drawn by one or more horses or other animal power, which may be used in conveying or transporting persons, baggage, freight or other articles, from point to point within the city of Indianapolis, for hire or pay, shall be deemed 'public vehicles;' and the owners, lessees, and drivers thereof shall be directed and controlled by the rules and regulations hereinafter set forth. Section 2. It shall be unlawful for any person to own or rent, and to use or permit to be used, any vehicle in the conveying or transporting of persons or articles in or upon the thoroughfares of the city of Indianapolis, without first paying into the city treasury the license tax in the next succeeding section set forth, having such vehicle duly numbered and registered by the city clerk and obtaining a public vehicle license therefor. Any person who shall use or operate any vehicle in violation of the requirements of this section shall be fined in any sum not exceeding $10; and each

day's continuance of such violation after conviction thereof, shall constitute a fresh offense."

Other sections of this ordinance fix the fee to be paid for a license to exercise the right of using the public vehicles mentioned in the first section, for the purpose of conveying and transporting persons, baggage, freight, and other articles in and through the city for hire or pay; while others provide for the issuing of the required license, and for the establishment of stands for public vehicles, and the prices that may be exacted for the transportation of passengers, etc., while others prescribe the qualifications of those serving as drivers of such vehicles, and providing that the license contemplated by the ordinance shall only be issued to owners or lessees of public vehicles. This ordinance, except some minor parts thereof, is treated by the parties in this appeal as being in full force and effect.

In 1891 the city of Indianapolis passed under the control of a statute enacted by the legislature in that year, and intended for the government of cities having a population of 100,000. See §3772 *et seq.* Burns 1901. Among the powers conferred on appellee's common council by the provisions of section twenty-three of this latter act (§3794 Burns 1901) are the following: "To license, tax, and regulate wheeled vehicles, provided that the funds derived therefrom *shall be applied only to the maintenance and repair of streets and alleys."* (Our italics.)

Under the authority so conferred, the common council, it appears, passed the ordinance of 1893, which appellant was convicted of having violated. Sections one, three, six, and seven of this ordinance read as follows: "Section 1. Be it ordained by the common council of the city of Indianapolis, that the owners of all vehicles used upon the streets of the city of Indianapolis, shall pay annually license fees as follows, viz.:" (Then follows a schedule of the amount of tax to be paid for the use of each vehicle.) " Section 3. That any person included in the provisions of this ordinance

desiring to use the streets of said city, shall pay or cause to be paid to the city treasurer for each vehicle, the license fee as herein provided, and take his receipt therefor, and upon. presentation of said receipt to the city comptroller, said city comptroller shall issue a license to the owner of said vehicle. It shall be unlawful for any person or persons owning any vehicle included in the provisions of this ordinance to use the streets of said city without first securing a license as herein provided." "Section 6. This ordinance shall in no manner affect the license fees as now paid the city by different lines of business under the existing laws and ordinances, but shall be in addition to any license fee or charge now required under the ordinances heretofore enacted. Section 7. The funds derived from the license herein provided for shall be applied only to the maintenance and repair of the streets and alleys of the city of Indianapolis."

It is disclosed by the agreed statement of facts in this case that appellant, at the dates charged in the complaint, was the owner of a one-horse wagon which he used and permitted to be used as a public vehicle for pay or hire in transporting and conveying articles of merchandise in and through the thoroughfares and streets of the city of Indianapolis, and that he used said vehicle generally upon said streets. It appears that at the time he was engaged in using his wagon as aforesaid, that he had not complied with the ordinance of 1880 as therein provided, and had not complied with that of 1893 by paying the tax thereby required for using vehicles on and over the streets of said. city. It is further disclosed, however, that before the commencement of this prosecution, he tendered to appellee in legal tender money the license fee required by the ordinance of 1880, which was refused, and the money so tendered was by him paid into court for the use of appellee.

The single question which appellant, under the facts, seeks to present, is whether he, as the owner and user of a public vehicle and amenable as such owner to the ordinance

of 1880, will also be required to pay the tax exacted by the ordinance of 1893, for using his wagon on and over the streets of the city, in the conveyance and transportation of baggage, freights, and other articles, for hire or pay. If the latter ordinance can be so construed as to embrace him within its provisions, then it is insisted by his counsel that it must be held invalid as to him for the reason asserted that he can not, for the privilege of using appellee's public streets, be subjected to the payment of a license fee, and, also, at the same time, to the payment of a tax for the exercise of the same right. It is contended that although the ordinance of 1880 may have been adopted by appellee in the exercise of its police power, and that the ordinance of 1893 may have been passed in the exercise of the taxing power, still it is contended that this fact can make no difference, as both of these ordinances assume to grant the same privilege.

An examination of the ordinance of 1880 fully discloses that the city in adopting it simply exercised the police power with which it was invested under the authority conferred by the legislature. It is settled beyond controversy that appellee properly could, in the exercise of such power, under the provisions of the general law pertaining to cities to which we have herein referred, require all persons engaged in the occupation of running or operating hacks, drays, coaches, and other public vehicles therein for pay, as a condition to this privilege, to take out or secure the license provided by the ordinance of 1880. The object or purpose of such a requirement or regulation, is to subject the occupation of running or operating public vehicles to police surveillance and supervision, and thereby prevent such business from being conducted in a manner harmful to the public.

A standard authority says: "Whatever refinements of reasoning may be indulged in, there are but two substantial phases to the imposition of a license tax on professions and

occupations. It is either a license, strictly so-called, imposed in the exercise of the ordinary police power of the state, or it is a tax, laid in the exercise of the power of taxation." Tiedeman, State and Fed. Control, 479.

The exacting of a license fee by an ordinance adopted by virtue of the police power, does not, and properly should not, as a general rule, contemplate, except incidentally, the raising of revenue. That the general purpose or object of the ordinance of 1893 is to raise revenue for the maintenance and repair of the streets of the city, is certainly evident. In fact such purpose is expressly declared in the ordinance, while the provision of section twenty-three of the charter upon which that ordinance is based, provides that the funds so raised be so applied. That the license tax imposed by the latter ordinance was laid by appellee in the exercise of its power of taxation under the authority conferred by section twenty-three of its charter, is certainly manifest. This proposition is settled by the decision of this court in the appeal of the City of Terre Haute. v. Kersey, ante, 300.

It appears to be conceded by counsel for appellant that the latter is amenable or subject to the police regulations of the ordinance of 1880. That appellee may, in addition to exacting of him obedience to the police regulations provided by that ordinance, also require him to pay the tax laid and imposed by the ordinance of 1893, in our opinion, can not be successfully controverted. The latter ordinance by its broad and positive provisions discloses that it was intended to include and apply to the owners of all vehicles, whether private or public, used upon the streets for any purpose. This ordinance does not contemplate taxing the vehicles as property, but simply imposes the tax upon the owners thereof for using them on and over the public streets. City of Terre Haute v. Kersey, supra.

This requirement is consistent with reason and justice, for it is a well recognized fact that it is the use of vehicles

on the streets of a city which, in the main, causes the wear and tear of such streets and the tax exacted is authorized and intended by the statute to reimburse the city, in part at least, for the great expense to which it is subjected in the maintenance and repairs of its public streets.

Without further comment we conclude that appellant is amenable to the provisions of the ordinance of 1893, and the mere fact that he must also yield obedience to the ordinance of 1880, does not render that of 1893 invalid as to him, as contended by his counsel; neither do the ordinances in question profess, as contended by appellant, to grant to him the same privilege.

It follows that the conviction of appellant by the lower court under the facts was right, and the judgment is therefore affirmed.