## SPROUT *v.* CITY OF SOUTH BEND.

[No. 24,695. Filed October 14, 1926. Rehearing denied December 16, 1926.]

1. CARRIERS.—*Ordinance requiring "jitney bus" operator to obtain liability insurance not unconstitutional.*—A city ordinance, authorized by cl. 32 and cl. 38 of §10284 Burns 1926, requiring liability insurance providing that insurer will pay for injuries to passengers before doing business of carrier of passengers by "jitney bus," did not violate any provision of the state or federal Constitution. p. 569.

2. CONSTITUTIONAL LAW.—*Ordinance requiring "jitney bus" operator to obtain liability insurance of company authorized to do business in this state not unconstitutional.*—The fact that a city ordinance required a "jitney bus" operator to obtain liability insurance from a company authorized to do business in this state did not render the ordinance invalid as violating the privileges and immunities section of the state Constitution (§75 Burns 1926) or the Fourteenth Amendment of the federal Constitution, as any foreign indemnity insurance company having sufficient assets and doing a lawful business can readily become qualified to write insurance in this state (§9129 Burns 1926). p. 569.

3. COMMERCE.—*Ordinance requiring bus operators to procure liability insurance not unconstitutional as interfering with interstate commerce where operator solicited and accepted passengers in city, though none was accepted except for interstate transportation.*—An ordinance requiring all persons operating busses within the city limits to procure liability insurance guaranteeing that all judgments against the operator for damages resulting from the operation of his bus shall be paid is not unconstitutional because of interfering with interstate commerce where he used the streets for indiscriminate solicitation and acceptance of passengers, though he only received passengers for interstate transportation.   p. 569.

4. MUNICIPAL CORPORATIONS.—*City may license and regulate commercial bus line operating partly outside of city and state.*—A city may legally license and regulate a commercial bus line operating for hire on its streets, although such line is not operated exclusively within the city or the state, and even though its main business is interstate.   p. 569.

5. CARRIERS.—*Bus driven on streets of city for purpose of soliciting and receiving passengers was within provision of automobile law which authorized cities to regulate commercial vehicles "used within the city limits for public hire."*—Where a "jitney bus" operator drove his car about the streets of a city and solicited and received passengers therein, but accepted only passengers who would pay fare to a point in another state, the bus was "a commercial vehicle used within the city limits for public hire" within the provision of the statute of 1913 regulating the use of automobiles (Acts 1913 pp. 779, 789, §17, §10476d Burns 1914) which authorized cities and towns to adopt ordinances requiring a license and regulating the use of such vehicles therein.   p. 569.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by the city of South Bend against Otis Sprout for the violation of an ordinance regulating the use of "jitney busses" therein.   From a judgment against the defendant, he appeals.   *Affirmed.*

*Isaac Kane Parks* and *Walter R. Arnold,* for appellant.

*Lewis W. Hammond,* for appellee.

EWBANK, J.—The question for decision in this case is the validity or invalidity of certain ordinances of the city of South Bend. The statute constituting the city charter authorizes cities "to regulate, tax and license coaches, hacks, drays, automobiles, and all other vehicles," and "to license, tax, and regulate public hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen, bill-posters and all other persons pursuing like occupations for pay or hire." §10284, cls. 32, 38 Burns 1926, Acts 1905 p. 219 (252), §53. And the motor vehicle registration act then provided that: "No owner of a motor vehicle, except motor trucks and motor driven commercial vehicles" should be required to pay any municipal tax or license fee, in addition to the registration fee paid to the secretary of state, with a proviso that nothing in the act should be construed as affecting the power of municipal corporations to make and enforce ordinances, rules and regulations affecting motor trucks and motor driven commercial vehicles used within their limits for public hire. §10476d Burns 1914, Acts 1913 p. 779 (789), §17.

Ordinance No. 2135 of the appellee city, adopted January 12, 1921, reads as follows: "Every motor vehicle and electric vehicle operated by a person * * * along and upon any public street or highway within the city of South Bend * * * for the purposes of affording a means of local street or highway transportation by indiscriminately accepting and discharging such persons as may offer themselves for transportation, either at temporary street or highway parking places or along the course or within the territory on which said vehicle is or may be running or operating * * * is hereby declared to be a commercial vehicle * * * (with exceptions as to taxicabs and hotel busses) * * * No person * * * shall operate any such commercial vehicle, commonly known as a jitney bus,

and it shall be unlawful to do so, unless there shall have been filed with the city controller of said city a liability contract of insurance issued to such person * * * by an insurance company, organized under the laws of the State of Indiana, or authorized to transact business therein, providing * * * for the payment of any final judgment that may be rendered against the insured for damages to property or bodily injury or death to others, resulting from accident or collision for which said person * * * may be liable * * * growing out of the negligent operation of such commercial vehicle, in a sum not exceeding $1,000 to any one person or $2,500 to more than one person as a result of one accident * * * Any person * * * shall pay to the city controller for the benefit of said city, for each commercial vehicle commonly known as a jitney bus to be so driven or operated, an annual license fee as follows, to wit: * * * (b) $50 for a vehicle having a rated seating capacity for more than seven and not more than twelve passengers * * *. Any person * * * upon conviction for the violation or failure to comply with any provisions of this ordinance, shall be fined in any sum not more than $100 * * *." Without repealing this ordinance, but as supplementary thereto, the common council, on December 27, 1921, adopted another ordinance, numbered 2229, which (in part) provided as follows: "Section 1. Every motor vehicle operated by a person * * * along and upon any public street or highway within the city of South Bend * * * for the purpose of affording a means of street or highway transportation by indiscriminately accepting such persons as may offer themselves for transportation, from a point within the city of South Bend to a point outside the limits * * * and from a point without to a point within the city of South Bend, is declared to be, for the purpose of this ordinance, a

commercial motor vehicle for hire  *  *  *  (but excepting taxicabs and hotel busses)  *  *  *  Section 3.  It shall be unlawful for any person  *  *  *  to operate a commercial vehicle as defined under section one of this ordinance on any street or avenue in the city of South Bend without first paying to the controller  *  *  *  a license fee at the rate provided in section 5 of said ordinance number 2135 for commercial vehicles defined therein,  *  *  *  and it shall be unlawful to operate such commercial vehicle without first filing with the controller a liability contract of insurance as provided in said ordinance number 2135 for commercial vehicles operating in the city of South Bend.  Section 4.  Any person  *  *  *  upon conviction for the violation of or failure to comply with any provision of this ordinance shall be fined not more than $100  *  *  *."

A verified complaint by the city of South Bend alleged that on May 30, 1923, "defendant, then being a resident of the said county of St. Joseph, and being at said time within the corporate limits of the said city of South Bend, did then and there operate a commercial vehicle upon a public street of said city without having first obtained a license from said city so to do, contrary to sections one, two, three and four of an ordinance No. 2229 adopted by the common council of said city December 27, 1921."  The evidence consisted of a stipulation of facts which, in addition to setting out the ordinances at length, stated the following facts:  That defendant resided in St. Joseph county, Indiana, at the city of Mishawaka, which adjoins South Bend on the east; that daily for several months he operated between South Bend and Niles, in the State of Michigan, a motor bus for the transportation of passengers between those places.  (It is about four and one-half miles from the north city limits of South Bend to the Michigan state

line, in which distance is one village and many suburban residences, and Niles is four or five miles north of the state line.)    That, in the course of such transportation of passengers, defendant entered within the corporate limits of the city of South Bend, "and there offered himself and his vehicle as instruments of transportation for passengers from said city of South Bend to the said city of Niles, Michigan, and all points intermediate between (them)    *    *    *    north of the state line,    *    *    *    and in the solicitation of passengers for transportation, and in making contracts of passage, stated that he was engaged in effecting transportation only between points in the State of Indiana and points in the State of Michigan, but that if passengers who were taken aboard his bus for transportation desired to leave the said bus prior to the passage from Indiana to Michigan, they were at liberty to do so, if the bus stopped    *    *    *,    but they would be obliged to pay transportation to some point in Michigan    *    *    *. That it was defendant's practice, on said day and for several months prior thereto, on making stops after leaving the city of South Bend, to permit passengers who had taken passage to some point north of the state line between Indiana and Michigan, to alight from said bus, and that they did so on numerous occasions; (but that defendant did not take on his bus any passengers for transportation from one point in South Bend to another point within said city) that said bus was at all times a vehicle meeting and conforming to the definition of a 'commercial vehicle,' as used in ordinance number 2229    *    *    *    and that defendant, in the course of his said operations, did use the public highways within the city of South Bend.    *    *    *    That the automobile bus operated by defendant as aforesaid had a capacity of twelve passengers.    *    *    *    That defendant's said bus was assessed and taxed for state,

county, township and city purposes, at the residence of the defendant * * * That the defendant at no time made application for a license under either of said ordinances 2135 or 2229, and did not at the times herein mentioned have or hold such license * * * (but) the defendant had a license for the bus in question, and had paid to the secretary of state of the State of Indiana all license fees required directly by the statutes of the state."

The only reason suggested by appellant for insisting that the judgment appealed from was erroneous is that the ordinance alleged to have been violated was void. And the only reasons he has offered for attacking its validity are that: (a) It undertakes to regulate and impose burdens upon the business of transporting passengers in interstate commerce, in violation of the third clause of Art. 1, §8 of the Constitution of the United States; that (b) it violates the statute which forbids any city to impose taxes or license fees upon any motor vehicles, except motor trucks and motor driven commercial vehicles used for public hire within the city; and that (c) by requiring a contract of indemnity insurance to be obtained from "an insurance company organized under the laws of the State of Indiana, or authorized to transact business therein," it undertakes to grant privileges and immunities to one class of citizens which do not belong equally to all citizens on the same terms, in violation of Art. 1, §23 of the Constitution of Indiana, and denies to appellant the equal protection of the laws, in violation of Art. XIV, §1 of the amendments to the Constitution of the United States.

1-5. Requiring an indemnity bond conditioned to pay all judgments recovered by passengers for any negligent injuries they may sustain, as a condition of doing the business of a common carrier of passen-

gers with a "jitney bus" did not violate any provisions of the Constitution, state or federal. *In re Cardinal* (1915), 170 Cal. 519, 150 Pac. 348, L. R. A. 1915F 850; *Ex parte Sullivan* (1915), 77 Tex. Crim. Rep. 72, 178 S. W. 537, P. U. R. 1915E 441; *Ex parte Dickey* (1915), 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F 840, P. U. R. 1915E 93; *City of Memphis* v. *State, ex rel.* (1915), 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B 1151, P. U. R. 1916A 825, Ann. Cas. 1917C 1056; *Willis* v. *City of Fort Smith* (1916), 121 Ark. 606, 182 S. W. 275; *LeBlanc* v. *City of New Orleans* (1915), 138 La. 243, 70 So. 212; *Auto Transit Co.* v. *City of Ft. Worth* (1915), 182 S. W. (Tex. Civ. App.) 685; *Nolen* v. *Riechman* (1915), 225 Fed. 812; *Hazelton* v. *City of Atlanta* (1916), 144 Ga. 775, 87 S. E. 1043; *Huston* v. *Des Moines* (1916), 176 Iowa 455, 156 N. W. 883; *Commonwealth* v. *Theberge* (1918), 231 Mass. 386, 121 N. E. 30; *West* v. *Asbury Park* (1916), 89 N. J. Law 402, 99 Atl. 190; *Jitney Bus Assn.* v. *Wilkes-Barre* (1917), 256 Pa. 462, 100 Atl. 954; *Ex parte Parr* (1918), 82 Tex. Crim. Rep. 525, 200 S. W. 404; *Hadfield* v. *Lundin* (1917), 98 Wash. 657, 168 Pac. 516, L. R. A. 1918B 909, Ann. Cas. 1918C 942; *State, ex rel.,* v. *Dillon* (1921), 82 Fla. 276, 89 So. 558, 22 A. L. R. 227, and note on page 230; *Packard* v. *Banton* (1924), 264 U. S. 140, 144, 68 L. Ed. 596, 44 Sup. Ct. 257. Neither did the provision that the indemnity insurance should be obtained from a company authorized to do business in the State of Indiana make the ordinance unconstitutional. Any foreign indemnity insurance company having sufficient assets and doing a lawful business can readily become qualified to write insurance in this state (§9129 Burns 1926, Acts 1905 p. 454, §1) and it does not appear that appellant was or could be prevented by this provision from obtaining indemnity insurance satisfac-

tory to any other state into which he might carry passengers. *Lutz* v. *City of New Orleans* (1916), 235 Fed. 978, affirmed, 237 Fed. 1018, 150 C. C. A. 654; *Puget Sound Light, etc., Co.* v. *Grassmeyer* (1918), 102 Wash. 482, 173 Pac. 503, L. R. A. 1918F 469; *State* v. *Seattle Taxicab & Transfer Co.* (1916), 90 Wash. 416, 156 Pac. 837; *In re Cardinal, supra; City of Memphis* v. *State, ex rel., supra;* Note 22 A. L. R. 233.

But even if he did receive passengers only for transportation across the state line, the use of the city streets as a place for the indiscriminate solicitation and acceptance of passengers in a "jitney bus" brought him within the police power of the state to license and regulate both driver and vehicle by way of providing for the safety, security and general welfare of the public, so long, at least, as Congress has not legislated on the subject. *Hendrick* v. *Maryland* (1914), 235 U. S. 610, 622, 623, 59 L. Ed. 385, 390, 35 Sup. Ct. 142; *Kane* v. *New Jersey* (1916), 242 U. S. 160, 168, 61 L. Ed. 222, 37 Sup. Ct. 30; *Wiggins Ferry Co.* v. *East St. Louis* (1882), 107 U. S. 365, 27 L. Ed. 419, 2 Sup. Ct. 257; *Martine* v. *Kozer* (1926), 11 Fed. (2d) 645. And the facts that he did not have any stations or soliciting agents and did not confine his use of the streets of the city to driving on and along them in carrying interstate commerce, but went upon them with his motor vehicle and there offered the vehicle and his services generally for the use of patrons who would take passage and pay fare to a point in Michigan, using the street both for the solicitation and receipt of passengers, brought his car within the description of a "motor driven commercial vehicle" and a "motor driven commercial vehicle used within the limits (of the city) for public hire," that may be charged license fees and subjected to regulations by the city, notwithstanding the

certificate of registration issued by the secretary of state. §10476d, *supra*.

The judgment is affirmed.

ON PETITION FOR REHEARING.

EWBANK, J.—Because the opinion of the court does not mention certain cases cited in appellant's brief, he cites them again as being "of controlling importance in determining the questions presented," with the suggestion that he is "constrained to believe the court overlooked them." *Buck* v. *Kuykendall* (1924), 267 U. S. 307, 45 Sup. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286, decided that a state could not, upon a determination by the state or its officers that adequate facilities for conducting interstate commerce over a certain route were already in existence, directly by statute or indirectly through the agency of an administrative board or officer, prohibit one person from using the highways of the state for the operation of a motor bus line exclusively engaged in interstate commerce, while permitting others to use the highways for the same purpose and in the same manner. The cases of *Bush & Sons Co.* v. *Maloy* (1925), 267 U. S. 317, 45 Sup. Ct. 326, 69 L. Ed. 627, *People* v. *Yahne* (1925), 195 Cal. 683, 235 Pac. 50, and *McNeely* v. *Mayor, etc.* (1925), 4 Fed. (2d) 899, were decided on the authority of the Buck case, and merely held that the state had no power to prohibit one person from engaging in interstate commerce upon and over the same highways for travel, under the same conditions and regulations that it was permitted to others. *Michigan Public Utilities Co.* v. *Duke* (1924), 266 U. S. 570, 45 Sup. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105, held that a company which was operating strictly as a private carrier in interstate commerce, under private contracts with a person or persons for whom it was engaged in carrying, could not be required, by reason

of the fact that it operated over the public highways, to take upon itself "the onerous duties and strict liability of a common carrier, and the obligation of furnishing an indemnity bond" imposed by law on common carriers. *Alpha Portland Cement Co.* v. *Massachusetts* (1924), 268 U. S. 203, 45 Sup. Ct. 477, 69 L. Ed. 916, 44 A. L. R. 1219, held that a corporation whose property was all in other states, except property of the value of $573 used in a local agency which took orders for interstate sales, could not be made to pay an excise tax of $567.57 per year, measured by the two factors of "the proportion of the total value of capital shares attributed to transactions therein, and the proportion of net income attributed to such transactions," shown to have been arrived at by a calculation that took into account nearly $17,000,000 of property, more than $1,-600,000 of wages and salaries, almost $11,000,000 of gross receipts, and the fact that the wages and salaries "assignable to Massachusetts" were $11,493.38, and the gross receipts so "assignable" were $343,204.60. The court said that the payment exacted was an "excise demanded on account of interstate business," but expressly stated that "the local business of a foreign corporation may support an excise measured in any reasonable way, if neither interstate commerce nor property beyond the state is taxed." *Shafer* v. *Farmers Grain Co.* (1923), 268 U. S. 189, 45 Sup. Ct. 481, 69 L. Ed. 909, held the North Dakota Grain Grading act to be unconstitutional, as being expressly designed to reach and cover buying for interstate shipment, and as subjecting such buying for interstate shipment to conditions and measures of control which directly interfered with and burdened interstate commerce, and undertook to prescribe rules under which an important part of such commerce should be conducted. *Adams Express Co.* v. *New York* (1913), 232 U. S. 14, 34 Sup.

Ct. 203, 58 L. Ed. 483, held that the sections of the city ordinance sought to be enforced against the express company were not designed to apply to interstate commerce, but that, in any event, state regulations were excluded because congress had exercised its authority and provided its own scheme of regulation to secure the discharge of the public obligations which the express business involved.

The cases cited by appellant on the question of requiring an indemnity bond conditioned to pay all judgments recovered by passengers for any negligent injury they might sustain were decided before the case of *Packard* v. *Banton* (1924), 264 U. S. 140, 68 L. Ed. 596, 44 Sup. Ct. 257, referred to in the original opinion, and, so far as they are inconsistent with that case, are not controlling. The court gave careful consideration at the original hearing to all of these cases, but had not thought it necessary to distinguish them.

The petition for rehearing is overruled.