## SPROUT *v.* CITY OF SOUTH BEND.

No. 208. Submitted January 20, 1928.—Decided May 14, 1928.

*Mr. Dudley M. Shively,* with whom *Messrs. Isaac K. Parks, Frank Gilmer,* and *Walter R. Arnold* were on the brief, submitted for plaintiff in error.

If the ordinance be held valid as not a burden on interstate commerce, then a like ordinance in the State of Michigan would be upheld on the same principle. Result: Every city and village through which an exclusively interstate carrier would be obliged to effect a passage from Grand Rapids, Michigan, to Indianapolis, Indiana, could make similar exactions. Thirty-three municipal corporations each compelling the payment of a $50.00 annual license fee (to say nothing of the $200.00 tax), a total of $1,650.00, for the privilege of making, say, only two trips a month between the city of Grand Rapids, Michigan, and the city of Indianapolis, Indiana. And if the trip be extended further, into Kentucky, proportionately more. It was precisely to avert such unconscionable practices that

the interstate commerce clause was written into the Federal Constitution.

Besides leaving each village, town and city to exact such tribute, nothing was to prevent each village, town and city—under the holding of the Indiana Supreme Court—from requiring the carrier to take out insurance in companies in Indiana. No end to the qualifications and specifications touching the companies in which the insurance must be taken before licenses can be issued by the several municipalities. Each at liberty to make requirements entirely inconsistent with all the others. The municipalities of Michigan (and of Kentucky, if the course of carriage be extended to that State) would, naturally, not be content with a policy of insurance written in some corporation of Indiana.

*Mr. Iden S. Romig,* City Attorney, submitted for defendant in error.

Requiring an indemnity bond did not violate any provision of the Constitution. *Ex parte Cardinal,* 170 Cal. 519; *Ex parte Sullivan,* 77 Tex. Cr. R. 72; *Ex parte Dickey,* 76 W. Va. 576; *Memphis v. State,* 133 Tenn. 83; *Willis v. Fort Smith,* 121 Ark. 606; *LeBlanc v. New Orleans,* 138 La. 243; *Auto Transit Co. v. Fort Worth,* (Tex. Civ. App.) 182 S. W. 685; *Nolen v. Riechman,* 225 F. 812; *Hazelton v. Atlanta,* 144 Ga. 775; *Huston v. Des Moines,* 176 Iowa 255; *Commonwealth v. Theberge,* 231 Mass. 386; *West v. Asbury Park,* 89 N. J. L. 402; *Jitney Bus Ass'n v. Wilkes-Barre,* 256 Pa. 462; *Ex parte Parr,* 82 Tex. Cr. R. 525; *Hadfield v. Lundin,* 98 Wash. 657; *State ex rel. v. Dillon,* 82 Fla. 276; *Packard v. Banton,* 264 U. S. 140.

Requiring that the insurance be obtained from a company authorized in the State of Indiana did not make the ordinance unconstitutional. *Lutz v. New Orleans,* 235 Fed. 978, affirmed 237 Fed. 1018; *Puget Sound L.*

& P. Co. v. *Grassmeyer*, 102 Wash. 482; *State* v. *Seattle Taxicab Co.*, 90 Wash. 416; *Ex parte Cardinal*, 170 Cal. 519; *Memphis* v. *State*, 133 Tenn. 83.

Use of the city streets as a place for the indiscriminate solicitation and acceptance of passengers brought the bus owner within the police power of the State to license and regulate both driver and vehicle by way of providing for the safety, security, and general welfare of the public, so long, at least, as Congress had not legislated on the subject. *Hendricks* v. *Maryland*, 235 U. S. 610; *Kane* v. *New Jersey*, 242 U. S. 160; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365; *Martine* v. *Kozer*, 11 F. (2d) 645.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

By ordinance adopted in 1921, South Bend, Indiana, prohibited, with exceptions not here material, the operation on its streets of any motor bus for hire unless licensed by the city. Sprout, a resident of that State, operated regularly a bus with seats for twelve persons between points within South Bend and the City of Niles, Michigan. He paid the state registration fee but refused to apply for a city license. In 1923, he was prosecuted by the city in a local court for violation of the ordinance and defended on the ground that it was invalid as applied to him. The case was heard on agreed facts. Sprout claimed, among other things, that the ordinance violated the commerce clause and the equal protection clause of the Fourteenth Amendment. These claims were overruled; a penalty of $50 was imposed; and the judgment of the trial court was affirmed by the highest court of the State, 198 Ind. 563. The case is here on writ of error. Compare *John P. King Manufacturing Co.* v. *City Council of Augusta*, ante p. 100.

The ordinance prescribes license fees varying with the seating capacity of the bus. That for a bus with seats for twelve persons is $50 a year. Before the license can issue, the applicant must file with the city a contract of liability insurance providing for the payment of any final judgment that may be rendered for damages to property or the person resulting from the negligent operation of the bus within the city. The amount of insurance required is limited to a liability of $1,000 to any one person and of $2,500 for damages arising from a single accident. The insurance must be furnished by a company authorized to do business within the State. These requirements apply alike to busses operating wholly within the city and to those operating from points within it to points without. The ordinance makes no distinction between busses engaged exclusively in interstate commerce, those engaged exclusively in intrastate commerce, and those engaged in both classes of commerce. Nor does the ordinance, in its requirement of liability insurance, distinguish in terms between liability to passengers traveling interstate and other liability resulting from negligent operation.

The claim that the ordinance violates the Fourteenth Amendment is rested mainly upon the ground that Sprout is required to furnish insurance issued by a company authorized to do business in Indiana. That contention may be quickly disposed of. The provision limiting the insurance to such companies is obviously a reasonable one so far as Sprout is concerned. Compare *La Tourette* v. *McMaster*, 248 U. S. 465, 468. The further objection that the requirement discriminates against insurance companies not authorized to do business within the State is not open to the plaintiff in error. *Cronin* v. *Adams*, 192 U. S. 108, 114; *Erie R. R. Co.* v. *Williams*, 233 U. S. 685, 705; *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co.*, 249 U. S. 134, 149.

The claim that the ordinance violates the commerce clause presents questions requiring serious consideration. Sprout did not carry passengers from one point in South Bend to another. He was not a local carrier. Primarily his business was interstate. But the agreed facts show that he was not engaged exclusively in interstate commerce. The distance from the north city limits of South Bend to Niles is about nine miles. Half of this distance lies within Indiana. Along the highway traversed within that State lie many suburban residences and one village tributary to South Bend. Sprout purported to offer transportation from that city only to persons destined to points in Michigan. He required that all passengers from South Bend pay the fare to some Michigan point. But, in fact, he served suburban passengers. He made stops habitually at points within Indiana in order to permit passengers from South Bend to leave the bus before the state-line was reached. The legal character of this suburban bus traffic was not affected by the device of requiring the payment of a fare fixed for some Michigan point or by Sprout's professing that he sought only passengers destined to that State. The actual facts govern. For this purpose, the destination intended by the passenger when he begins his journey and known to the carrier, determines the character of the commerce. Compare *Philadelphia & Reading Ry. Co.* v. *Hancock,* 253 U. S. 284; *Baltimore & Ohio R. R. Co.* v. *Settle,* 260 U. S. 166, 171. The suburban traffic was intrastate commerce.

The Supreme Court of Indiana did not pass upon the question whether Sprout, by reason of the suburban traffic, was engaged also in intrastate traffic. Nor did it consider whether his rights as an interstate carrier would be affected by his engaging also in intrastate business. It affirmed the judgment of the trial court on the broad ground that, since Sprout made use of the streets in "the

indiscriminate solicitation and acceptance of passengers," he was " within the police power of the state to license and regulate both driver and vehicle by way of providing for the safety, security and general welfare of the public."

It is true that, in the absence of federal legislation covering the subject, the State may impose, even upon vehicles using the highways exclusively in interstate commerce, non-discriminatory regulations for the purpose of insuring the public safety and convenience; that licensing or registration of busses is a measure appropriate to that end; and that a license fee no larger in amount than is reasonably required to defray the expense of administering the regulations may be demanded. *Hendrick* v. *Maryland,* 235 U. S. 610, 622; *Kane* v. *New Jersey,* 242 U. S. 160; *Morris* v. *Duby,* 274 U. S. 135; *Clark* v. *Poor,* 274 U. S. 554. Compare *Hess* v. *Pawloski,* 274 U. S. 352. These powers may also be exercised by a city if authorized to do so by appropriate legislation. Compare *Erb* v. *Morasch,* 177 U. S. 584, 585; *Mackay Telegraph Co.* v. *Little Rock,* 250 U. S. 94, 99. Such regulations rest for their validity upon the same basis as do state inspection laws, *Patapsco Guano Co.* v. *Board of Agriculture,* 171 U. S. 345; *Red " C " Oil Co.* v. *Board of Agriculture,* 222 U. S. 380, and municipal ordinances imposing on telegraph companies, though engaged in interstate commerce, a tax to defray the expense incident to the inspection of poles and wires. *Western Union Telegraph Co.* v. *New Hope,* 187 U. S. 419; *Postal Telegraph-Cable Co.* v. *Richmond,* 249 U. S. 252, 258; *Mackay Telegraph Co.* v. *Little Rock,* 250 U. S. 94, 99. But it does not appear that the license fee here in question was imposed as an incident of such a scheme of municipal regulation; nor that the proceeds were applied to defraying the expenses of such regulation; nor that the amount collected under the ordinance was no more than was reasonably required for such a purpose. It follows that the exaction of the license fee

cannot be sustained as a police measure. *Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160, 164; *Postal-Telegraph Cable Co.* v. *New Hope,* 192 U. S. 55; *Adams Express Co.* v. *New York,* 232 U. S. 14, 32. Compare *Foote & Co.* v. *Stanley,* 232 U. S. 494, 503.

It is true also that a State may impose, even on motor vehicles engaged exclusively in interstate commerce, a reasonable charge as their fair contribution to the cost of constructing and maintaining the public highways. *Hendrick* v. *Maryland,* 235 U. S. 610, 622; *Interstate Busses Corporation* v. *Blodgett,* 276 U. S. 245. And this power also may be delegated in part to a municipality by appropriate legislation. Compare *St. Louis* v. *Western Union Telegraph Co.,* 148 U. S. 92, 98; 149 U. S. 465. An exaction for that purpose may be included in a license fee. *Hendrick* v. *Maryland, supra; Kane* v. *New Jersey,* 242 U. S. 160, 168–169; *Clark* v. *Poor,* 274 U. S. 554. But no part of the license fee here in question may be assumed to have been prescribed for that purpose. A flat tax, substantial in amount and the same for busses plying the streets continuously in local service and for busses making, as do many interstate busses, only a single trip daily, could hardly have been designed as a measure of the cost or value of the use of the highways. And there is no suggestion, either in the language of the ordinance or in the construction put upon it by the Supreme Court of Indiana, that the proceeds of the license fees are, in any part, to be applied to the construction or maintenance of the city streets. Compare *Tomlinson* v. *City of Indianapolis,* 144 Ind. 142; *City of Terre Haute* v. *Kersey,* 159 Ind. 300; *Hogan* v. *City of Indianapolis,* 159 Ind. 523.

It follows that on the record before us the exaction of the license fee cannot be sustained either as an inspection fee or as an excise for the use of the streets of the city. It remains to consider whether it can be sustained as an occupation tax. A State may, by appropriate legisla-

tion, require payment of an occupation tax from one engaged in both intrastate and interstate commerce. *Postal Telegraph Cable Co.* v. *Charleston,* 153 U. S. 692; *Osborne* v. *Florida,* 164 U. S. 650; *Kehrer* v. *Stewart,* 197 U. S. 60; *Watters* v. *Michigan,* 248 U. S. 65; *Raley & Bros.* v. *Richardson,* 264 U. S. 157. Compare *Interstate Busses Corporation* v. *Holyoke Street Ry. Co.,* 273 U. S. 45; *Arnold* v. *Hanna,* 276 U. S. 591. And it may delegate a part of that power to a municipality. Compare *Postal Telegraph-Cable Co.* v. *Richmond,* 249 U. S. 252, 257. But in order that the fee or tax shall be valid, it must appear that it is imposed solely on account of the intrastate business; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the imposition; and that the person taxed could discontinue the intrastate business without withdrawing also from the interstate business. *Leloup* v. *Port of Mobile,* 127 U. S. 640; *Crutcher* v. *Kentucky,* 141 U. S. 47, 58; *Adams Express Co.* v. *New York,* 232 U. S. 14, 30; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642, 647. Compare *Williams* v. *Talladega,* 226 U. S. 404, 417; *Postal Telegraph-Cable Co.* v. *Richmond,* 249 U. S. 252. The Supreme Court of Indiana, far from construing the ordinance as applicable solely to busses engaged in intrastate commerce, assumed that it applied to busses engaged exclusively in interstate commerce and that Sprout was so engaged. The privilege of engaging in such commerce is one which a State cannot deny. *Buck* v. *Kuykendall,* 267 U. S. 307; *Bush & Sons Co.* v. *Maloy,* 267 U. S. 317. A State is equally inhibited from conditioning its exercise on the payment of an occupation tax.

Objection under the commerce clause is made also to the requirement of liability insurance. There being grave dangers incident to the operation of motor vehicles, a State may require users of such vehicles on the public

highways to file contracts providing adequate insurance for the payment of judgments recovered for certain injuries, resulting from their operation. *Packard* v. *Banton*, 264 U. S. 140. Compare *Kane* v. *New Jersey*, 242 U. S. 160, 167; *Hess* v. *Pawloski*, 274 U. S. 352; *Clark* v. *Poor*, 274 U. S. 554, 557. It may, consistently with the Federal Constitution, delegate by appropriate legislation a part of this power to a municipalty. Such provisions for insurance are not, even as applied to busses engaged exclusively in interstate commerce, an unreasonable burden on that commerce, if limited to damages suffered within the State by persons other than the passenger. Whether the insurance here prescribed is, because of its scope, obnoxious to the commerce clause, we need not inquire. Compare *Adams Express Co.* v. *New York*, 232 U. S. 14, 33; *Michigan Public Utilities Commission* v. *Duke*, 266 U. S. 570, 577. For the ordinance is void because of the imposition of the license fee.

*Reversed.*