MURPHY MOTOR FREIGHT LINES, INC. AND ANOTHER v. ESAIAS R. WEISS.[1]

June 12, 1936.

No. 30,513.

[1]Reported in 267 N. W. 495.

474

See 191 Minn. 49, 253 N. W. 1.

*Jackson, Walsh & Yackel,* for appellant Murphy Motor Freight Lines, Inc.

*Harry H. Peterson,* Attorney General, and *Harry W. Oehler,* Assistant Attorney General, for appellant Railroad and Warehouse Commission.

*Reuben G. Thoreen* and *Sullivan & Neumeier,* for respondent.

I. M. OLSEN, JUSTICE.

On complaint of Murphy Motor Freight Lines, Inc., the railroad and warehouse commission issued an order requiring the defendant, Esaias R. Weiss, to show cause why he should not be restrained and enjoined from continuing the transportation of freight by truck over the route and in the manner hereinafter set forth. A hearing was had before the commission and an order made on April 18, 1933, reading as follows:

"It is therefore ordered, That Esaias R. Weiss, of Stillwater, Minnesota, be, and he hereby is directed to forthwith cease and desist his operations hereinbefore outlined between the Twin Cities, Stillwater and Duluth so far as Minnesota intrastate traffic is concerned."

From this order defendant appealed to the district court. The appeal was there heard upon the record presented to and the evidence heard before the commission. The district court made findings of fact and conclusions of law vacating and setting aside the order of the commission. From an order denying their motion for amended findings of fact and conclusions of law, or, in the alternative, for a new trial, plaintiffs appeal.

Defendant is engaged as a common carrier in transporting freight by trucks over public highways. He operates, under permit or certificate from the railroad and warehouse commission, a truck line between the Twin Cities, North St. Paul, White Bear, Bald Eagle,

Stillwater, and Bayport, in this state. That transportation is not here involved. In June, 1932, he commenced to operate another truck line for transportation of freight from the Twin Cities and Stillwater, as southern termini, to Superior, Wisconsin, as the northern terminus. In so doing he traveled over Minnesota highways to and into the westerly outlying part of the city of Duluth and for some distance over the streets of the city to an interstate bridge and over said bridge into Superior, Wisconsin. It is this transportation over Minnesota highways which is here involved. Defendant does not go into the main business section of Duluth, which is located some three miles easterly from the bridge mentioned. He does not take on or deliver any freight in the city of Duluth. In going north the defendant picks up his freight at the terminal stations of the Minneapolis-St. Paul Truck Terminal, a corporation, which receives freight from Minneapolis and St. Paul shippers, and freight coming into the Twin Cities for shipment to the head of the Lakes and northern Minnesota and Wisconsin points. Arriving at Superior, defendant unloads his freight at the warehouse of the Hill Warehouse & Trucking Company of Superior, which then transports the freight for Duluth and points north thereof to its destination, distributes freight for Superior, and retransfers freight for northern Wisconsin and Michigan points. Freight for transportation by defendant from Superior to the Twin Cities is gathered up by the Hill Warehouse & Trucking Company in Duluth and Superior, brought to its warehouse, and there delivered to defendant. He then transports it from Superior to the Twin Cities over the same route as used by him in going from the Twin Cities to Superior. Prior to commencing the transportation service in question defendant had applied to the commission for a certificate permitting him to operate a truck line between the Twin Cities and Duluth, which application was denied. In addition to what has already been outlined, the trial court found, in substance, that of the freight so transported by defendant in going from the Twin Cities to Superior about half was destined for consignees in Superior and other northern Wisconsin and Michigan points, and

the other half for consignees in Duluth and other points in northern Minnesota; that about half of the southbound freight picked up by defendant at the warehouse of the Hill Warehouse & Trucking Company and transported by him to the Twin Cities originates in Duluth and other northern Minnesota points, and the other half originates in Superior and other points in northern Wisconsin and Michigan. There is some conflict in the evidence as to the proportion of the freight originating in or destined for Duluth and other Minnesota points, and that originating in or destined for Superior and other Wisconsin and Michigan points. Plaintiffs claim the proportion originating in and destined for Duluth and Minnesota points was somewhat greater than as found by the trial court. There is support in the evidence for the court's findings on that issue.

The court further found that Superior, Wisconsin, is a natural point for the collection and distribution of freight at the head of the Great Lakes, consigned to Duluth and Superior, and to points in northern Minnesota and northern Wisconsin and. Michigan, and a natural place for the concentration of freight from these places destined for the Twin Cities; that the route used by defendant was the most convenient, safe, and economical route between the Twin Cities and Superior; that defendant's operations and the route selected by him were not a subterfuge or a means of evading regulation by the state of Minnesota; that the Hill Warehouse & Trucking Company was a connecting carrier to which freight was delivered by defendant and others for carriage to its ultimate destination.

As conclusions of law the court held: (1) That the Minnesota railroad and warehouse commission had no power or authority under the state statute to issue the "cease and desist" order hereinbefore mentioned; (2) that defendant's transportation business was transportation in interstate commerce and subject only to police regulations by this state, with which defendant had complied; (3) that the order of the commission here in question was unlawful, unreasonable, and void.

These findings and conclusions of the trial court which we have set forth are challenged by the plaintiffs. It should be noted that

the complainant Murphy Motor Freight Lines, Incorporated, operates a freight truck transportation line over Minnesota roads between the Twin Cities and Duluth under certificate and permit issued to it by the Minnesota railroad and warehouse commission; also that the order here in question was made by a two-to-one decision, one commissioner dissenting and holding that defendant was operating as an interstate carrier.

Plaintiffs, appellants here, state that the only question is whether defendant's transportation can be deemed commerce or transportation between different states within the meaning of the constitutional provision relating thereto. Presumably the constitutional provision referred to is the commerce clause of the federal constitution. The challenge to the findings and conclusions of the trial court is on the ground that the same are not sustained by the evidence.

The question presented is whether there is evidence reasonably sufficient to sustain the trial court in finding that the transportation here involved was transportation by a common carrier in interstate commerce. We hold that there was sufficient evidence to sustain that finding and to sustain the finding that the route selected and the manner of conducting the transportation were not adopted as a subterfuge for evading regulation by this state or its commission. That does not mean that this state is without power to impose charges for use of its highways and for enforcing police regulations even on interstate transportation. In Sprout v. City of South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. ed. 833, 62 A. L. R. 45, it is held that the state may impose on motor vehicles engaged in interstate commerce a reasonable charge as a fair contribution to the cost of construction and maintenance of public highways over which such commerce is carried on and may impose a reasonable license fee to defray the cost incident to inspection and the enforcement of police regulations for such traffic. There is here no complaint of the failure to comply with any law or regulation as to license fees or other charges imposed.

Other cases cited by plaintiffs have been examined and found not to present the same fact situation as here presented.

Defendant contends that the commission was without statutory authority to grant such an order as here made. In the case of Madden Bros. Inc. v. Railroad & Warehouse Comm. (D. C.) 43 F. (2d) 236, the question of the power of the commission to make a "cease and desist" order such as the one here in question was considered and decided. The court held [43 F. (2d) 240]:

"While the statute in question in the present case devolves upon the commission the duty to inquire into and pass upon the question of the right of any person, etc., to a certificate of public necessity or convenience and to deny or grant such certificate as the facts may warrant, no provision of the statute has been pointed out to me, nor can I find any, giving any force or effect to a cease and desist order such as is involved in this case.

"While it is the duty of or the commission is empowered to prosecute any auto transportation company, as defined by the statute, for operating without a certificate and for violating the orders of the commission made in the performance of its duty, it is not the duty of the commission to order any person, etc., to cease and desist from violating the statute before beginning such prosecution. The prosecution may as well be made without any such order.

"It is clear that the order of the commission, in so far as it assumes to direct the plaintiff to cease and desist from further carrying on its operations, exceeded the powers of the commission under the statute."

In a case of Railroad & Warehouse Comm. v. Madden Bros. Inc. and another, tried in the district court of St. Louis county shortly after the decision in the case in the federal court, the state district court followed the decision of the federal court and held that the commission had no power or authority to issue a "cease and desist" order under the statute, L. 1925, c. 185, 1 Mason Minn. St. 1927, §§ 5015-1 to 5015-19. By L. 1933, c. 170, 3 Mason Minn. St. 1934 Supp. §§ 5015-20 to 5015-44, the legislature extended the powers of the commission and granted the power to issue an order for a common carrier of freight on public highways of this state to cease and desist from violating any terms of L. 1925, c. 185, or of said c. 170,

or any order of the commission issued under either chapter. The 1933 act, however, did not go into effect until July 1, 1933, and the present proceeding was heard and the order therein made by the commission some months before July 1, 1933. We are in accord with the two decisions above noted and sustain the holding of the trial court in the present case that the commission had no power or authority under the statute then in force to issue the cease and desist order here involved.

The order appealed from is affirmed.