ARTHURS, PLAINTIFF, *v.* GREYHOUND CORPORATION, DEFENDANT.

Municipal Court, Portsmouth.

No. 37846.   Decided October 23, 1962.

*Mr. William Horr*, for plaintiff.
*Messrs. Bannon, Howland, McCurdy & Dever*, for defendant.

STEPHENSON, J. This action is one for recovery of damages for loss of baggage checked with a common carrier and which has become lost. Plaintiff on May 12, 1961, purchased a bus ticket from Portsmouth, Ohio to Youngstown, Ohio, and checked her bag with the Company at the Portsmouth station. Upon arrival at Youngstown the plaintiff attempted to claim her bag but it could not then, nor has it yet, been found. The luggage check issued to her bore a notation in printing on the reverse side that the Company would not be liable except for $25.00 for loss or damage to the baggage unless an additional valuation was made and additional charges paid. Signs were on the wall of the station and at the baggage room that baggage valuation be limited to $25.00 unless a higher valuation was declared and also that tariffs were available for inspection. Defendant on said date had on file with the Interstate Commerce Commission and the Ohio Public Utilities Commission tariffs wherein the $25.00 limitation was set forth. Plaintiff denied seeing the signs, or reading the reverse of her baggage ticket and further testified that the limitation was not brought to her attention by defendant's employees. The petition herein claimed the value of the bag and contents to be $257.52, to which petition the defendant filed an answer setting up first a general denial and a second defense that it was engaged in Interstate Commerce and that the provisions of the tariff were appliable to her by reason of a contract with plaintiff.

This court does not feel that it can seriously be contended that the defendant, with respect to the plaintiff and her luggage, was engaged in interstate commerce. The United State Supreme Court has stated that in determining character of commerce the actual destination intended by the passenger when he begins his journey and known to the carrier governs. *Sprout* v. *City of South Bend, Ind.*, 277 U. S., 163. The fact that the defendant

is also engaged in interstate operations and that the Portsmouth and Youngstown stations are used in such operation do not remove the carriage between such points from intrastate commerce. *Haselton* v. *Interstate Stage Lines*, 133 Atl., 451. *Baltimore & O. R. Co.* v. *Public Service Comm.*, 81 W. Va., 457, 945 E., 545. The carriage being intrastate commerce the laws of Ohio are controlling. A full understanding of the decision of the Ohio Supreme Court in *Erie R. R. Co.* v. *Steinberg*, 94 Ohio St., 189 and other Ohio cases however necessitates an examination of the federal law.

The original Interstate Commerce Act was first enacted February 4, 1887, and on June 29, 1906, was amended to include what is known as the Carmack Amendment. Prior to this amendment the rule of carrier liability for an interstate shipment of property, as enforced in both federal and state courts, was either that of the general common law, as declared by the United States Supreme Court or that determined by the supposed public policy of a particular state or that prescribed by statute law of a particular state. *Adams Exp. Co.* v. *Croninger*, 226 U. S., 491 (1913). The portions of the amendment of interest is that it required an interstate carrier to issue a receipt or bill of lading, that it was made liable to the holder of the receipt for any loss, damage, or injury to the property caused by it or a connecting carrier and declared that no contract, receipt, rule or regulation shall exempt such carrier from the liability imposed.

The U. S. Supreme Court in construing this amendment held that latter part set out above (i. e. that no contract, receipt, rule or regulation shall exempt etc.) was not violated by permitting a carrier to file in its tariffs required by the federal act, a limitation as to the amount of liability for luggage except on payment of a specified additional rate. The court also noted that the act did not change the common law rule that the carrier is an insurer against its own negligence and was simply that carriers shall obtain commensurate compensation for the responsibility assumed. Thus the filing of tariffs with the Interstate Commerce Commission would bar recovery for baggage in an amount excess of that set by the Company regardless if the passenger knew of the tariff limitation or not. *Boston and*

*Main Rd.* v. *Hooker*, 233 U. S., 97. Subsequent legislation, the Cummings Amendment, 38 Stat. at Lar., 1196, as amended by the Act of Aug. 9, 1916, 39 Stat. at Lar., 441, provided that as to property liability against carriers for "full actual loss, damage or injury" to property carried by the carrier or connecting carrier notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading or in any contract, rule, regulation or in any tariff filed with the I. C. C. Baggage carried on passenger trains was specifically excepted from the operation of the Act requiring liability in full for actual loss, damage, or injury. Another proviso was added that liability for full loss could be limited for property concerning which the carrier shall have been or shall be expressly authorized by the I. C. C. or required by the I. C. C. to establish rates dependent upon the value declared in writing by the shipper or agreed on in writing as released value. It is to be noted that the two exceptions were in the 1916 amendment but not the original Cummings Amendment. It has since been held that as to baggage carried on passenger trains that the decisions under the original Carmack Act, because of the exceptions above, were still applicable and that published tariff provisions would prevent a recovery. *Galveston H & S R. R. Co.* v. *Woodbury*, 254 U. S., 357 (1920).

The federal acts previously referred to did not apply to motor vehicles carriers engaged in Interstate Commerce until the Federal Motor Carrier Act, 49 U. S. C. A. Section 301-327, was enacted by congress. Since that date, 1935, Section 20 (11) and (12) of the I. C. C. Act have been applicable. Thus two Ohio cases in our Court of Appeals have upheld a limitation of liability as to baggage in interstate commerce on motor vehicle carriers by applying the decisions under the Carmack Amendment. *Patton* v. *Pa. Greyhound Lines, Inc.*, 75 Ohio App., 100 (1944) and *Royalty* v. *S. E. Greyhound Lines, Inc.*, 75 Ohio App., 322 (1945). In view of the federal decisions no other conclusion could have been reached in these cases.

Section 4965.54, Revised Code, former Section 8994-1, General Code, is an exact copy of the original Carmack Amendment except that applies only to intrastate commerce. In construing this act in 1916 the Ohio Supreme Court, in the *Steinberg case,*

above referred to, held that a common carrier could not relieve itself from the liability imposed by the section by any rule or regulation contained in the schedule of rates filed with the State Public Utilities Commission. The court recognized that its decision was contrary to holding of the United State Supreme Court in the *Hooker case,* and gave as one of the reasons that a positive duty to determine valuation rested upon the shipper and to charge the proper rate for the shipment. Another reason given by the court was that to follow the *Hooker decision,* would cause a conflict with federal law upon the subject because of the Cummings Amendment. It is ironic to note that the *Steinberg case,* was decided on May 9, 1916, and the amendment removing baggage from the operation of the Cummings Amendment was enacted in August, 1916 so that a conflict of law with respect to baggage was created despite the efforts of the Ohio Supreme Court to avoid it.

Whether sound or unsound the *Steinberg case,* has not been modified or reversed on this point and is still applicable law in this state. The defendant herein is therefore not protected by the filing of tariffs and the setting up of a limitation of $25.00 and that defense cannot prevail.

An examination of the other Ohio authorities on limitations as to the amount of liability are in the opinion of this Court correctly set forth in 8 Ohio Jurisprudence (2d), Section 318, p. 746.

"Words printed on an ordinary railroad ticket or on a baggage check, limiting the liability of a carrier to a specific amount for loss of baggage, are not binding on the passenger unless, with knowledge of the limitation, he expressly agrees to it."

This proposition is squarely supported by *R. R. Co.* v. *Campbell,* 36 Ohio St., 647 and *King Bros. Trans. Co.* v. *Altherr,* O. N. P. (n. s.), 275. This is in accord with the general rule as set forth in 13 Corpus Juris Secundum, Section 877, page 1704.

From the evidence presented, the defendant testifying that she did not know of the limitations, either on the ticket or in the tariff, she did not assent to them.

The baggage in this case having been placed with the defendant and the failure of the defendant to deliver raises a

prima facie case of failure of its duty as an insurer or at least of negligence against the defendant on the basis of a bailment. *Cleveland-Akron Bus Co.* v. *Rogoff*, 25 Ohio App., 538, *King Bros. Transp. Co.* v. *Altherr, supra.* No evidence was offered by the defendant to account for the loss. The prima facie case standing unrebutted, this Court must find in favor of the plaintiff. Applying the measure of damages as set forth in the *Steinberg case*, this is where property is of a personal nature the measure of damages being its reasonable value to the owner, the court finds that the sum of $257.52 to be reasonable from the evidence and that plaintiff should recover in that amount.

An entry may be drawn finding in favor of the plaintiff in the sum prayed for and costs saving the exceptions of the defendant.